## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO.  3:20-CV-207-RJC-DCK

| | | |
|---|---|---|
| SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **MEMORANDUM AND RECOMMENDATION** |
| LAWN ETC., LLC, d/b/a CORRECTIVE LANDSCAPE SERVICES; ADAM C. DUFFY; and LYDIA DUFFY, | ) ) ) ) | |
| Defendants. | ) ) | |

**THIS MATTER IS BEFORE THE COURT** on "Defendants Adam C. Duffy And Lydia Duffy's Motion To Dismiss" (Document No. 6) and "Defendants Adam C. Duffy And Lydia Duffy's Motion To Dismiss Or Stay The Action Pending Arbitration" (Document No. 7).  These motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b) and are now ripe for disposition.  The motions are related, and so in the interests of judicial economy and efficient case management, the undersigned will consider the two pending motions together in this Memorandum And Recommendation.  Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion to dismiss be <u>denied without prejudice</u> and that the motion to stay be <u>granted</u>.

## I.  BACKGROUND

Plaintiff Selective Insurance Company of South Carolina ("Plaintiff" or "Selective") initiated this declaratory judgment action against Defendants Lawn Etc., LLC ("Lawn Etc.")

(doing business as Corrective Landscape Services),[1] Adam C. Duffy ("Mr. Duffy"), and Lydia Duffy ("Mrs. Duffy") (collectively, "Defendants") with the filing of a "Complaint For Declaratory Relief" ("Complaint") in this Court on April 3, 2020.  (Document No. 1).  The undersigned will refer to Mr. and Mrs. Duffy collectively as "Duffy Defendants" throughout this Memorandum And Recommendation.   In the instant case, Plaintiff seeks a declaration from the Court "that the maximum potential available coverage" for the Duffy Defendants under the uninsured motorist ("UIM") coverage provisions of its insurance policy issued to Lawn Etc. and Mr. Duffy is $300,000.  Id. at p. 1.

The underlying facts giving rise to the issue of coverage under Selective's UIM provisions concern a motorcycle accident on September 30, 2016.  Id. at p. 2.  The Duffy Defendants were riding on a motorcycle in Union County, North Carolina when a vehicle operated by Jon Ryan Williams ("Williams") (the underinsured motorist) "failed to yield the right of way" to the Duffy Defendants' motorcycle, resulting in a collision.  Id.  According to the Complaint, "Mr. Williams' automobile insurance provider, State Farm, tendered its liability limits of $100,000 per person" to the Duffy Defendants.  Id. at p. 3.  The Duffy Defendants then "sought additional indemnification under underinsured motorist [] provisions from four different insurance policies, including that of Selective."  Id.  The "primary UIM policies," including those issued by Nationwide Property and Casualty Insurance Company ("Nationwide"), Progressive Southeastern Insurance Company ("Progressive"), and Southern Insurance Company of Virginia ("Southern"), tendered an aggregate of $700,000 to the Duffy Defendants, according to Plaintiff.  Id. at p. 4.

The Duffy Defendants also sought payment from Selective under its UIM coverage, but "[t]he Selective Policy contains a more specific excess provision than the [Nationwide,

---

[1] As alleged in the Complaint, "Mr. Duffy is the manager and registered agent for Lawn Etc."  (Document No. 1, p. 2).

Progressive, and Southern] policies." Id. Plaintiff contends in its Complaint that under its excess provision, the Duffy Defendants can recover a maximum of $1,000,000 total, under all possible policies containing UIM coverage – which represents "[t]he highest applicable limit for any one vehicle under any coverage form or Policy providing coverage on either a primary or excess basis." Id. Since Selective's limit of $1,000,000 per accident is the highest limit out of the four policies from which the Duffy Defendants sought indemnification under UIM provisions, it contends that its limit supplies the maximum possible recovery. Thus, Plaintiff asserts, given the already-tendered $700,000 amount from Nationwide, Progressive, and Southern, the Duffy Defendants are owed a maximum of $300,000 from the "excess UIM Selective Policy." Id.

Although not referenced in Plaintiff's Complaint, the Duffy Defendants indicate in their brief supporting their pending motions that in June 2019, they filed an action in North Carolina state court in Union County against the underinsured motorist, Williams, "seeking an adjudication of their bodily injury claims." (Document No. 8, p. 2). The state court complaint also referenced four unnamed defendants, including Nationwide, Progressive, Southern, and Selective, and it included both a demand for arbitration and a motion to stay the litigation "pending completion of arbitration" with Southern, Progressive, and Selective regarding "the [disputed] amount of bodily injury damages the [Duffy Defendants] are legally entitled to recover from Defendant Williams, an underinsured motorist." (Document No. 7-1, p. 7).

According to the Duffy Defendants, they "have settled all claims within the scope of the tort action except for the claims under Plaintiff's UIM coverage." (Document No. 8, p. 2). They also contend that "Plaintiff and the Duffy Defendants have agreed to a stay of the state court action pending settlement of the Duffy Defendants' remaining claims, or completion of arbitration." Id.; see (Document No. 7-2). Mr. Duffy "made a demand for arbitration relating to his claim for bodily

injury damages and his wife's derivative claim for loss of consortium" upon Selective on April 20, 2020. (Document No. 8, p. 2). Mrs. Duffy did not seek arbitration of her own bodily injury claim yet because the Duffy Defendants believe that Mr. Duffy's claim alone and Mrs. Duffy's derivative claim will, "once adjudicated, [] exhaust those coverage limits." Id. at pp. 2-3; see (Document No. 7-3).

On May 29, 2020, the Duffy Defendants filed a "Motion To Dismiss" (Document No. 6), a "Motion To Dismiss Or Stay The Action Pending Arbitration" (Document No. 7), and a "Brief In Support Of Their Motions To Dismiss Or To Stay The Action Pending Arbitration" (Document No. 8). Selective filed a response to the pending motions on June 19, 2020, "Plaintiff's Memorandum Of Law Opposing Defendants' Motion To Dismiss (Doc. 6) And Motion To Dismiss Or Stay The Action Pending Arbitration (Doc. 7)." (Document No. 13). The Duffy Defendants filed a "Reply Brief" (Document No. 14) on June 23, 2020.

The motions have now been fully briefed and are ripe for review and a recommendation to the presiding district judge.

## II. STANDARD OF REVIEW

**Motion To Dismiss Under Rule 12(b)(1)**

A motion to dismiss under Rule 12(b)(1) seeks to dismiss a complaint for lack of subject-matter jurisdiction. Fed.R.Civ.P. 12(b)(1). The plaintiff has the burden of proving that subject-matter jurisdiction exists. See Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The existence of subject-matter jurisdiction is a threshold issue the court must address before considering the merits of the case. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). "The subject matter jurisdiction of federal courts is limited and the federal courts may exercise only that jurisdiction which Congress has prescribed."

4

<u>Chris v. Tenet</u>, 221 F.3d 648, 655 (4th Cir. 2000) (citing <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994)).

When a defendant challenges subject-matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." <u>Richmond</u>, 945 F.2d at 768. The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." <u>Id.</u>; <u>see also</u> <u>Evans v. B.F. Perkins Co.</u>, 166 F.3d 642, 647 (4th Cir. 1999).

**Motion To Dismiss Under Rule 12(b)(6)**

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992); <u>Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership</u>, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)); <u>see also</u> <u>Robinson v. American Honda Motor Co., Inc.</u>, 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u>

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled

to relief." Specific facts are not necessary; the statement need only
"'give the defendant fair notice of what the ... claim is and the
grounds upon which it rests.'" In addition, when ruling on a
defendant's motion to dismiss, a judge must accept as true all of the
factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

## III. DISCUSSION

### Motion To Stay

The Duffy Defendants argue in their pending motion to stay that the action should be stayed pursuant to 9 U.S.C. § 3 and N.C. Gen. Stat. § 1-569.7. (Document No. 7). They argue that since "[t]he central issue underlying Plaintiff's action is the amount of bodily injury damages the Duffy Defendants are legally entitled to recover," the action must be stayed "pending completion of arbitration" since "that is the issue being arbitrated." (Document No. 8, p. 5). The Duffy Defendants argue that both "[f]ederal and North Carolina law [] favor arbitration of disputes," as codified by statute. Id.

Whether any disputed issue is arbitrable "is undeniably an issue for judicial determination." AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986). "The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 – 16, adopted a liberal federal policy favoring arbitration agreements." Degidio v. Crazy Horse Saloon & Rest. Inc, 880 F.3d 135, 140 (4th Cir. 2018) (internal quotations and citations omitted). The statute "recognizes that arbitration is an

6

expeditious way to resolve disputes and conserve judicial resources." Id. Courts must stay suits in which there is "any issue referable to arbitration under an agreement in writing for such arbitration…until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

According to the Supreme Court, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). Under that federal policy, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25.; see also Long v. Silver, 248 F.3d 309, 316 (4th Cir. 2001) ("the heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration" (internal quotations and citations omitted)). As a result, courts should not "deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Long, 248 F.3d at 316 (quoting United Steelworkers of Am. v. Warrior & Gulf Navig. Co., 363 U.S. 574, 582-83 (1960)).

Under North Carolina law, too, "public policy in [the] State, like federal policy, favors arbitration." Rodgers Builders, Inc. v. McQueen, 331 S.E.2d 726, 731 (N.C. Ct. App. 1985). The Court of Appeals of North Carolina went so far as to say that since "federal policy and the policy of this State are the same [with respect to favoring arbitration], it is appropriate to look to federal cases for guidance in determining whether plaintiff's claims fall within the scope of the arbitration clause." Id. "To determine whether the parties agreed to submit a particular dispute or claim to

arbitration, we must look at the language in the agreement, [] the arbitration clause, and ascertain whether the claims fall within its scope." Id.

Upon examination of the parties' briefs, it does not appear that there is dispute about whether there exists an agreement to arbitrate. The fact that there is an arbitration agreement is apparent from Selective's policy. (Document No. 1-1, p. 144). The dispute, instead, concerns a separate issue. Although not explicitly made clear in the briefs, the tension in the parties' positions seems to be whether the underlying issue in the pending arbitration is the same, or different, as the underlying issue in the instant declaratory judgment lawsuit. Selective's insurance policy contains a section regarding "Uninsured Motorists Coverage," under which there is a subsection concerning arbitration. Id. The policy provides that if Selective:

> and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated…[upon] [t]he "insured" [making] a written demand for arbitration.

Id. Nonetheless, the policy is clear that "disputes concerning *coverage* under this endorsement may not be arbitrated." Id. (emphasis added).

Selective has not provided adequate briefing on the motion to stay pending arbitration in its response to the motion. Nonetheless, as stated, it is apparent to the undersigned that the controlling question separating the respective positions of Plaintiff and the Duffy Defendants is whether the central issue in the instant declaratory judgment action is identical to the issue that is the subject of the pending arbitration. In the instant litigation, the central issue is what is the amount of Selective's maximum responsibility for damages owed to the Duffy Defendants, given that they are owed underinsured motorist benefits from Selective. See (Document No. 1). Presumably, given that Selective's Complaint does not deny that the Duffy Defendants *are* owed

8

underinsured motorist benefits under Selective's policy, the issue subject to arbitration is *not* whether the Duffy Defendants are legally entitled to recover damages from Williams. That issue is not in dispute, as is apparent from the Complaint. Instead, the subject of the arbitration would thus presumably be "the amount of [total] damages that are recoverable" by the Duffy Defendants on account of the motorcycle accident with the underinsured driver. (Document No. 1-1, p. 144).

The Duffy Defendants thus imply in their briefing that the subject of the declaratory judgment action is an arbitrable subject, since it is identical to the issue in the arbitration. The crux of what the Court must decide, then, is where to draw the line on what is a "coverage" issue under the arbitration agreement (which is not subject to arbitration), and on the other hand, what is a properly arbitrable issue. Id. Whether Selective's maximum liability under its UIM policy is arbitrable or not arbitrable is the essence of the dispute. The arbitration agreement states that the right to recover damages "from the [underinsured] owner or driver" and "the amount of damages that are recoverable" are properly arbitrable issues. Id.

The undersigned has concluded that the issue in the present action and the issue in the arbitration are not precisely the same. However, resolution of the issue in arbitration has an effect upon the issue in the present litigation – thus, these issues are undoubtedly related. Indeed, as stated, the issue of Selective's maximum liability to the Duffy Defendants is predicated upon a determination in arbitration of the *total* damages the Duffy Defendants are owed on account of the accident in the arbitration. See Chew v. Progressive Universal Ins. Co., 2010 WL 4338352, at *7 (E.D.N.C. Oct. 25, 2010) (where liability was not contested, but the amount of damages recoverable against the uninsured motorist was, the insurance company "was not liable under the contract to pay the claim until the extent of the uninsured motorist's liability for plaintiff's alleged [injury] was established" since "these damages are the measure of the uninsured motorist's

liability"). The undersigned thus declines to draw a line regarding what is appropriately a "coverage" issue (not arbitrable) and what is arbitrable. Instead, the undersigned respectfully recommends that the present action be stayed pending resolution of the arbitration, which presents a threshold issue to resolution of the declaratory judgment issue.

The instant case is unlike a case in which there is a question presented regarding "[w]hether a condition precedent to coverage has been met." Campbell v. State Farm Mut. Auto. Ins. Co., 2019 WL 1532229, at *2 (W.D.N.C. Apr. 9, 2019). In the Campbell case, there was a question about whether the injured individual was entitled to UIM benefits *at all* based on whether the definition of "uninsured motor vehicle" under the policy was triggered when the individual was injured in a bicycle accident. Id. at *3. The insurance company holding the UIM policy contended that "Defendant was not 'hit' and more likely had a single-bicycle accident" – which would not trigger coverage. Id. The Court suggested that it would not stay the declaratory judgment action in order to let arbitration play out because the lawsuit was "not one [concerning] liability or damages." Id. Not so here. Unlike the Campbell case, here, there is no dispute that the Duffy Defendants are owed *some* coverage under the Selective UIM provisions. There is a two-part question of how much, though. The Campbell case concerned a straightforward construction of the terms of the policy and application to the case facts to determine coverage. The instant declaratory judgment action, unlike Campbell, does not merely concern construction of the policy terms. It is sufficiently persuasive to the undersigned that the motion to stay pending arbitration should be granted because resolution of the arbitration influences the maximum liability that Selective owes to Mr. and Mrs. Duffy under its UIM coverage. Thus, the undersigned respectfully recommends that the motion to stay be granted and the parties first be directed to proceed with arbitration prior to resolution of this lawsuit.

10

**Motion To Dismiss**

The Duffy Defendants argue in their pending motion to dismiss that there is not a "justiciable controversy" between the parties "as to the coverage limits under the UIM coverage afforded by the Plaintiff to the Duffy Defendants." (Document No. 6, p. 2). They argue that since there has not been an adjudication of Mr. and Mrs. Duffy's bodily injury claims "at an amount in excess of $450,000" – which represents "the threshold necessary before any sums would be payable under the Plaintiff's UIM coverage" – the issue before the Court is "hypothetical." (Document No. 6, p. 2); (Document No. 8, p. 3 (quoting <u>McLaughlin v. Martin</u>, 374 S.E.2d 455, 456 (1988)). By their pending motion, the Duffy Defendants assert that they have each recovered $100,000 from "the liability insurance carrier for [Williams]" (presumably State Farm) and an aggregate of $350,000 *each* "from the three (3) insurance carriers who provided their primary UIM coverage." (Document No. 6, p. 1). Thus, the undersigned points out for clarity that the Plaintiff and the Duffy Defendants appear to agree that the total (as between both Mr. and Mrs. Duffy) UIM coverage recovery so far equals $700,000. Defendants cite a Fourth Circuit case to support their position that the case should be dismissed both "for lack of subject matter jurisdiction and failure to state a claim upon which declaratory relief can be granted." (Document No. 8, p. 4). In the <u>Elliott v. Am. States Ins. Co.</u> case, the Fourth Circuit stated that under North Carolina law, "a plaintiff is legally entitled to recover under a UIM policy only once a judgment is issued against the underinsured motorist determining liability and damages owed to the plaintiff." 883 F.3d 384, 398 (4th Cir. 2018).

Plaintiff, on the other hand, argues that the case should not be dismissed for lack of subject-matter jurisdiction because "there is an actual controversy existing in this case because Selective is seeking a declaration related to the interplay" between its excess clause, which references what

the "maximum recovery" the Duffy Defendants could accept would be, "juxtaposed with the *already* tendered coverage limits by the other policies identified in the Complaint." (Document No. 13, p. 4).

The undersigned has concluded that the recommendation that the motion to stay pending arbitration be granted necessitates a recommendation of denial of the motion to dismiss without prejudice. At this point, there is a legitimate controversy between the parties, as alleged in the Complaint, about the maximum liability that Selective owes to the Duffy Defendants under the terms of its underinsured motorist coverage. (Document No. 1, p. 5). The Duffy Defendants, according to the Complaint, contend that they are owed $1,000,000 under the Selective policy, and Plaintiff is seeking a declaration that it owes a maximum of $300,000. Id. Still, at this *stage*, it is premature to adjudicate the Plaintiff's maximum liability under the UIM policy without having conclusively determined in arbitration the total amount of damages that the Duffy Defendants are owed from the underinsured motorist. As stated, resolution of the arbitration issue is a threshold necessity.

But, that does not mean that the Court is stripped of subject-matter jurisdiction over the instant declaratory judgment action, and it also does not mean that Plaintiff has failed to state a claim upon which relief can be granted. Since the issues are not precisely the same, but rather the issue in the declaratory judgment action can only be litigated once the arbitration is resolved, dismissal of the action is not necessary. The instant case does not present a scenario in which the issue in front of the Court is one that should instead properly be the subject of arbitration. See, e.g., Liberty Mut. Ins. Co. v. Ventimiglia, 104 F. Supp. 2d 469, 470 (M.D. Pa. 2000) ("declaratory judgment actions may be dismissed under Fed.R.Civ.P. 12(b)(6) where the dispute is covered by

an arbitration agreement"). Here, instead, the case presents an issue that *depends* on the outcome of the arbitration – but it is not itself the subject of the arbitration. Thus, dismissal is not warranted.

There is still, as Plaintiff contends, an "actual controversy" between Plaintiff and the Duffy Defendants regarding the maximum potential coverage that Selective owes the Duffy Defendants under the UIM policy. See Cinoman v. Univ. of North Carolina, 764 S.E.2d 619, 623 (N.C. Ct. App. 2014) ("an actual controversy exists in a declaratory judgment action to determine the liability of an insurer under its policy where the policy contains a pro rata clause and the other applicable policy contains either an excess clause or a pro rata clause"). The Duffy Defendants' argument that the Plaintiff cannot rely upon the Cinoman case because Cinoman did not "involve[] an underinsured motorist" but rather concerned liability insurance is misplaced. Peterson v. Dillman, 782 S.E.2d 362, 367 (N.C. Ct. App. 2016); see (Document No. 14, p. 2). The Peterson case that the Duffy Defendants cite had nothing to do with whether there was a controversy between the parties – rather, it concerned whether an appeal was interlocutory, and thus, the reference to Cinoman does not bear upon the present issue of whether to dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction. As Plaintiff states, "[t]hat the coverage involved in this dispute is uninsured motorist coverage is incidental and immaterial." (Document No. 13, p. 5).

The McLaughlin case that the Duffy Defendants rely upon is similarly distinguishable. In that case, the Court of Appeals of North Carolina found that there was no subject-matter jurisdiction over a declaratory judgment action brought by plaintiffs against a variety of defendants (including an insurance company) which sought a declaration that (1) there was an uninsured motorist involved in an accident; and (2) adjudicated "the status and limits of the uninsured motorist coverages that are available to them." 374 S.E.2d at 456. Here, there is no question that

there was an underinsured motorist involved – neither Plaintiff nor the Duffy Defendants dispute that fact. Moreover, here, the issue concerns not whether, but how much, Selective owes to the Duffy Defendants under the UIM coverage – Selective does not dispute that it owes *some* amount of UIM coverage to Defendants. The outstanding, preceding issue that must be resolved, though, is the issue subject to arbitration: the total amount of damages that the Duffy Defendants are owed on account of the accident, which will clarify Selective's liability in the present action. And, there is a dispute here about the terms of the coverage and how much Selective will owe under the policy. See (Document No. 1, pp. 4-5). Thus, the issue here is not entirely "hypothetical" as it was in McLaughlin – rather, it is simply premature. 374 S.E.2d at 456.

At this point, as a result, it is too early to adjudicate this controversy without the arbitration conclusively determining the amount of damages the Duffy Defendants are owed as a general matter from the underinsured motorist. Thus, the undersigned respectfully recommends that the Duffy Defendants' motion to dismiss be denied without prejudice.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Defendants Adam C. Duffy And Lydia Duffy's Motion To Dismiss" (Document No. 6) be **DENIED without prejudice**.

**IT IS FURTHER RECOMMENDED** that "Defendants Adam C. Duffy And Lydia Duffy's Motion To Dismiss Or Stay The Action Pending Arbitration" (Document No. 7) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the parties be directed to proceed with arbitration and to file a status report by July 15, 2021 and every 90 days thereafter until arbitration is completed.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: March 31, 2021

David C. Keesler
United States Magistrate Judge

15