UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-00207-RJC-DCK

| | |
|---|---|
| SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA, ) ) ) | |
| Plaintiff, ) ) ) | |
| v. ) ) ) | **ORDER** |
| LAWN ETC. LLC, d/b/a CORRECTIVE LANDSCAPE SERVICES, ADAM C. DUFFY, and LYDIA DUFFY, ) ) ) ) ) | |
| Defendants. ) ) | |

**THIS MATTER** is before the Court on Plaintiff Selective Insurance Company of South Carolina's ("Selective's") Motion for Summary Judgment, (Doc. No. 30), and Motion for Default Judgment as to Defendant Lawn Etc., LLC, d/b/a Corrective Landscape Services. (Doc. No. 32). Selective brings these motions in its underlying action for declaratory judgment, requesting that this Court clarify its liability for injuries Adam and Lydia Duffy suffered in a car collision. Because the Duffy's Selective policy covers commercial fleet vehicles and is thus exempt from North Carolina's insurance policy stacking requirements, the policy's language determines Selective's liability to the Duffys. Selective's Motion for Summary Judgment, (Doc. No. 30), and Motion for Default Judgment, (Doc. No. 32) are therefore **GRANTED**.

I.   BACKGROUND

The parties agree on the underlying facts: seven years ago, a motorist struck Adam and Lydia Duffy while they rode their motorcycle in Union County, North Carolina. (Doc. No. 1, ¶ 11;

1

Doc. No. 22, ¶ 8). Both Duffys suffered injuries in the collision, and the insurance provider for the at-fault motorist tendered $200,000 to the couple for their medical expenses.

That $200,000 was insufficient, however, so the Duffys sought additional coverage through the underinsured motorist ("UIM") provisions of policies they held with four other insurance carriers: Selective Insurance Company of South Carolina, Nationwide Property and Casualty Insurance Company, Progressive Southeastern Insurance Company, and Southern Insurance Company of Virginia. They were successful: Nationwide tendered $155,556 to the Duffys, Progressive tendered $388,888, Southern tendered $155,556, and Selective tendered $300,000, for a collective total of $1,000,000 in UIM payments.

Selective's $300,000 payment was based on amounts already paid by the other three insurance companies – after Nationwide, Progressive, and Southern paid the Duffys a collective $700,000, Selective paid the remaining $300,000 to reach the Duffy's $1,000,000 coverage limit. Selective contends such payment was in accordance with the Duffy's "Business Automobile" policy, (Doc. No. 1-1, the "Selective policy"), which provides that "[t]he maximum recovery under all coverage forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any coverage form or policy providing coverage on either a primary or excess basis." (*Id.* at 142). Because the highest applicable limit under the Duffy's policy is $1,000,000, (*id.* at 139), Selective argues the Duffys can receive only up to $1,000,000 from collective payouts.

The Duffys disagree. They objected to Selective's payment, arguing they are entitled to "stack" the total limits of all four insurance policies, and thus, that Selective owes an additional $700,000 to reach the $1,000,000 Selective policy limit. Alternatively, the Duffys argue Lydia and Adam Duffy are each individually entitled to $1,000,000, and thus, that Selective owes an

additional $700,000 after offsetting amounts paid by other insurers. Selective filed this action for a declaratory judgment, requesting clarification from the Court on the extent of its obligation.

**II.    STANDARD OF REVIEW**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. *Id.* The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal citations omitted). "The burden on the moving party may be discharged by 'showing' . . . an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id.* at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Sylvia Dev. Corp. v. Calvert Cty., Md.*, 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the non-movant. *Anderson*, 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the

nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (internal citations omitted). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion; thus, if the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson*, 477 U.S. at 248-50.

## III. DISCUSSION

This case turns on whether the Duffy's Selective policy covers nonfleet private passenger motor vehicles and is therefore subject to certain requirements in the North Carolina Motor Vehicle Safety and Financial Responsibility Act, N.C. Gen. Stat. § 20-279.21(b)(4) ("FRA").

As the parties acknowledge, (Doc. Nos. 31, 35), North Carolina law governs the instant declaratory judgment[1] action: "[a]ll contracts of insurance on the property, lives or interests in this State shall be deemed to be made therein, and all contracts of insurance the application of which are taken within the State shall be deemed to have been made within this State and are subject to the laws thereof." N.C. Gen. Stat. § 58-3-1. Thus, the issues before the Court depend on the FRA and its North Carolina interpretations, and the parties agree there are no remaining disputes of material fact. (Doc. No. 31, at 3; Doc. No. 35, at 2).

North Carolina enacted the FRA "to compensate the innocent victims of financially irresponsible motorists," *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 573, 573 S.E.2d 118, 120 (2002), and its provisions "are deemed to be a part of every automobile insurance policy

---

[1] A federal court may exercise jurisdiction over a claim for declaratory judgement "when three essentials are met: (1) the complaint alleges an 'actual controversy' between the parties 'of sufficient immediacy and reality to warrant issuance of a declaratory judgement;' (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction.*" Volvo Const. Equipment North America, Inc. v. CLM*, 386 F.3d 581, 592 (4th Cir. 2004) (quoting the Declaratory Judgment Act, 28 U.S.C. § 2201). This case meets each requirement, as earlier noted by the Magistrate Judge, (Doc. No. 15), and echoed by this Court. (Doc. No. 16).

4

written in North Carolina and control over contrary provisions contained in such policies." *Wood v. Nunnery*, 222 N.C. App. 303, 730 S.E.2d 222, 225 (2012). Under the FRA, "a reviewing court must begin by ascertaining whether the tortfeasor's vehicle was an 'uninsured [or underinsured] highway vehicle' and whether the tortfeasor's liability policy has been exhausted." *N. Carolina Farm Bureau Mut. Ins. Co., Inc. v. Dana*, 379 N.C. 502, 508, 866 S.E.2d 710, 715 (2021). If the policy is so exhausted, the final step in the required analysis is to calculate the amount of coverage available to the insureds under the relevant UIM policy. *Id.*, 866 S.E.2d at 715.

The parties do not dispute that the motorist who struck the Duffys did so in an underinsured vehicle or that the motorist's liability has been exhausted. (Doc. No. 1, at 3; Doc. No. 1-1, at 144); *see also Dana*, 379 N.C. at 508, 866 S.E.2d at 715 (vehicle is underinsured when the sum of at-fault motorist's liability limit is less than insured's UIM coverage). Thus, only analysis of Selective's UIM liability to the Duffys remains. Though the Duffys apparently acknowledge that their policy language does entitle Selective to a setoff from other insurance payments, they argue the language violates the FRA. In relevant part, the FRA provides:

> [I]f a claimant is an insured under the underinsured motorist coverage on separate or additional policies, the limit of underinsured motorist coverage applicable to the claimant is the difference between the amount paid to the claimant under the exhausted liability policy or policies and the total limits of the claimant's underinsured motorist coverages as determined by combining the highest limit available under each policy; provided that this sentence shall apply only to insurance on nonfleet private passenger motor vehicles as described in G.S. 58-40-15(9) and (10). The underinsured motorist limits applicable to any one motor vehicle under a policy shall not be combined with or added to the limits applicable to any other motor vehicle under that policy.

N.C. Gen. Stat. § 20-279.21(b)(4). This statute, the Duffys argue, entitles them to "the highest limit available under each policy" – here, $1,000,000 from Selective – regardless of restrictive language in their "Business Automobile" policy. Selective, in turn, argues that the Duffy's Business Automobile policy is not "insurance on nonfleet private passenger motor vehicles," and thus, that

5

the "highest limit available under each policy" sentence does not supersede language within the Selective policy.

The FRA requires interpolicy stacking of underinsured motorist coverages,[2] but only under certain enumerated circumstances: "when the coverage is nonfleet and the vehicle covered is of the private passenger type." *North Carolina Farm Bureau Mut. Ins. Co. v. Stamper*, 122 N.C. App. 254, 258, 468 S.E.2d 584, 586 (1996). Because the Duffys seek to replace their policy language with the FRA's requirements, they can succeed only if their Selective coverage is nonfleet and the vehicles covered are private passenger motor vehicles. Absent those circumstances, the Duffy's Selective policy language controls.

**1.      The Selective Policy Language Controls**

**A.      The Coverage is Not Nonfleet**

Under North Carolina law, nonfleet coverage extends to vehicles "not eligible for classification as a fleet vehicle for the reason that the motor vehicle is one of four or fewer motor vehicles hired under a long-term contract or owned by the insured named in the policy." N.C. Gen. Stat. § 58-40-10 (2). North Carolina courts have, at times, interpreted this definition at face value. *See, e.g.*, *Hlasnick v. Federated Mut. Ins. Co.*, 136 N.C. App. 320, 324, 524 S.E.2d 386, 389 (2000) ("There is no dispute that Federated Mutual's policy insured more than four vehicles; therefore, the policy is a fleet policy."); *Aetna Cas. & Sur. Co. v. Fields*, 105 N.C. App. 563, 567, 414 S.E.2d

---

[2] *See Nationwide Mut. Ins. Co. v. Lankford*, 118 N.C. App. 368, 371, 455 S.E.2d 484, 486 (1995) ("[I]nterpolicy stacking means aggregating the limits of coverage contained under two or more contracts of insurance."); *see also* 18 Strong's N.C. Index 4th: *Insurance*, § 511 (May 2023 Update) ("The Motor Vehicle Safety and Financial Responsibility Act allow[s] a motorist to 'stack' coverages under multiple insurance policies and recover the entire maximum limit under the underinsured motorist provision, despite payment made by the motorist's primary insurer and payment made by the other driver's insurer.") (describing interpolicy stacking).

69, 71 (1992) (holding coverage was "by definition nonfleet" because Aetna's "policy afforded coverage for only four vans."); *but see McCaskill v. Pa. Nat. Mut. Cas. Ins. Co.*, 118 N.C. App. 320, 323, 454 S.E.2d 842, 844 (1995) (holding a five-vehicle policy was "nonfleet" because "the … vehicles were not used for the insured's business.").

Motor vehicles, too, boast a discrete definition: "Every vehicle which is self-propelled and every vehicle designed to run upon the highways which is pulled by a self-propelled vehicle." N.C. Gen. Stat. § 20-4.01(23). Accordingly, fleet coverage in North Carolina extends only to policies covering five or more vehicles which are self-propelled, or which are pulled by self-propelled vehicles, and which are used for the insured's business. *See McCaskill*, 118 N.C. App. at 323, 454 S.E.2d at 844; N.C. Gen. Stat. §§ 58-40-10 (2), 20-4.01(23).

Under these definitions, the Duffy's "Business Automobile Coverage" is fleet coverage (that is, not nonfleet coverage). The policy covers seven vehicles used by the Duffys in their business: four trucks and three trailers. (Doc. No. 1-1, at 139). The four trucks are self-propelled vehicles and the three trailers are "vehicles designed to run upon the highways which [are] pulled by a self-propelled vehicle." N.C. Gen. Stat. § 20-4.01(23).

The Duffys argue, in contrast, that the policy covers only three vehicles, but they conflate UIM coverage with the policy's more general coverage. The Duffys point to the Selective policy declarations, (Doc. No. 1-1, at 139), and descriptions of "Covered Auto Designation Symbols," (*id.* at 145), which mark Underinsured Motorist Coverage with a "7" symbol. (*Id.* at 139). That symbol, in turn, corresponds to "Only those 'autos' described in Item Three of the Declarations for which a premium charge is shown …." (*Id.* at 145). Premium charges are shown for only three vehicles: those with VIN numbers ending in 5454, 3920, and 4347, (*id.* at 139), and thus, the Duffys contend, the policy covers only three vehicles.

7

The statute is not so restrictive, however: "'Nonfleet' motor vehicle means a motor vehicle not eligible for classification as a fleet vehicle for the reason that the motor vehicle is one of four or fewer motor vehicles hired under a long-term contract or owned by the insured named in the policy." N.C. Gen. Stat. § 58-40-10. The fact that premiums are shown for only three vehicles does not change the number of vehicles "owned by the insured named in the policy," which remains, under this policy, at least seven. Thus, coverage under the Selective policy does extend over more than five vehicles, regardless of how many vehicles enjoy UIM coverage. In any event, UIM coverage extends to more than just the vehicles for which a premium is shown; indeed, the motorcycle on which the Duffys were injured is not such a vehicle. The coverage at issue, therefore, is not "insurance on nonfleet … vehicles," and thus, the Selective policy is exempt from the FRA's stacking requirements. *See* N.C. Gen. Stat. § 20-279.21(b)(4).

### B. The Vehicles are Not Private Passenger Motor Vehicles

Under North Carolina law, "'Private passenger motor vehicle' means a motor vehicle that is a pickup truck or van that is owned by an individual or by husband and wife or individuals who are residents of the same household if it (1) has a gross vehicle weight as specified by the manufacturer of less than 14,000 pounds; and (2) is not used for the delivery or transportation of goods or materials unless such use is (i) incidental to the insured's business of installing, maintaining, or repairing furnishings or equipment, or (ii) for farming or ranching … ." N.C. Gen. Stat. § 58-40-10.[3]

---

[3] The Duffys also point to N.C. Gen. Stat. §§ 58-40-10(9)-(10) and § 58-40-15 to assert the vehicles are private passenger motor vehicles, (Doc. No. 37), but neither those statutes nor the Duffy's arguments centered on them offer any relevant information beyond the definition in N.C. Gen. Stat. § 58-40-10.

8

Of the seven relevant vehicles, three (the trailers) are not pickup trucks or vans. Of the four remaining trucks, three appear to weigh less than 14,000 pounds, according to VIN data available from the National Highway Traffic Safety Administration, (Doc. No. 1-1, at 139), and of those, only one is classified as a "Pickup" (the other two vehicles are "Incomplete Vehicle[s]," not pickup trucks). *See Nationwide Mut. Ins. Co. v. Mabe*, 342 N.C. 482, 501, 467 S.E.2d 34, 45 (1996) (describing "having a pickup body" as a threshold test that a truck "typically sold without any type of bed on the vehicle" would fail); *Integon Nat. Ins. Co. v. Sechrist*, 708 S.E.2d 216 (N.C. Ct. App. 2011) (table) ("[T]he vehicles are both dump trucks, each weighing over 10,000 pounds. Accordingly, … the two dump trucks covered by the Business Auto Policy are not 'private passenger vehicle[s.]'").

No matter their classification, however, each of the four trucks are used for the delivery or transportation of goods for Lawn Etc. – they are trucks covered by a "Business Automobile Coverage" insurance policy, and they are the types of vehicles used in such businesses. *See Fields*, 105 N.C. App. at 569, 414 S.E.2d at 73 (affirming summary judgment for insurer because, among other reasons, "the policy in question is by acknowledgement of all parties captioned 'Business Auto Coverage Form' and appears on its face to be a type of insurance coverage that is excluded from the stacking provisions of [N.C. Gen. Stat.] § 20–279.21(b)(4) which covers only nonfleet private passenger motor vehicle insurance."); *Mabe*, 342 N.C. at 501, 467 S.E.2d at 45 ("[I]n determining what the legislature intended when defining 'private passenger motor vehicle,' common sense tells us that the legislature was referring to vehicles used every day by the citizens of this State.").

Outside the statute, the North Carolina Supreme Court has applied a much simpler approach: a vehicle is not a private passenger vehicle if "its use was commercial." *Fields*, 105 N.C.

9

App. at 569, 414 S.E.2d at 73. The nature of the vehicles, along with their designation as business automobiles indicates their use was commercial, and it strains credulity to assert that a landscaper would use these vehicles for primarily non-business purposes. The seven trucks and trailers, therefore, are not "private passenger motor vehicles," and thus, the Selective policy is exempt from the FRA's stacking requirements. *See* N.C. Gen. Stat. § 20-279.21(b)(4).

### C. The Policy is Not Applicable Solely to Fleet Vehicles

Disputes over "insurance on nonfleet private passenger motor vehicles" aside, the Duffys argue that a different portion of the FRA controls, according to the Fourth Circuit's unpublished decision in *Vincent v. AMCO Ins. Co.*, 821 F. App'x 220, 224 (4th Cir. 2020). There, the court examined a similar but separate excerpt of the FRA: "[N]o policy of motor vehicle liability insurance ... applicable solely to fleet vehicles shall be required to provide underinsured motorist coverage." *Id.* (quoting N.C. Gen. Stat. § 20-279.21(b)(4)). In analyzing that provision, the court held that while the insured's policy applied to at least five vehicles, all of which were used for business purposes, the policy "*also* applie[d] to many other vehicles, including any vehicle that the Vincents borrow from a friend for personal use." *Id.* Thus, the FRA did require the insurance company to provide underinsured motorist coverage to the insureds, because their policy was not applicable solely to fleet vehicles.

Here too, the Duffy's policy is not "applicable solely to fleet vehicles." Indeed, the vehicle on which the Duffys rode at the time of the crash – a motorcycle – was a nonfleet private passenger motor vehicle, and Selective agrees that the Duffy's policy applies to vehicles other than those listed in the "Business Automobile Declaration." (Doc. No. 1-1, at 139; Doc. No. 31).

Still, the Duffy's reliance on *Vincent* is off.; the FRA language at issue in *Vincent* requires Selective to provide underinsured motorist coverage, which Selective has provided to the tune of

10

$300,000. The relevant FRA language here, by contrast, sets specific limits for that underinsured motorist coverage, "provided [those limits] shall apply only to insurance on nonfleet private passenger motor vehicles … ." N.C. Gen. Stat. § 20-279.21(b)(4). The Duffys could argue – though they do not – that the Fourth Circuit's interpretation of insurance "applicable solely to fleet vehicles" extends to insurance "on nonfleet private passenger motor vehicles," and thus that the FRA's limits at issue here do not exclude the Selective policy because the policy provides insurance when the Duffys are injured in their fleet vehicles or their other nonfleet vehicles.

North Carolina and federal case law suggest that such an interpretation is improper, however. To begin, the Fourth Circuit rested its holding on the word "solely," a word that does not appear in the language at issue here. *Vincent*, 821 F. App'x at 224 ("AMCO now argues that any policy covering at least five vehicles is categorically a policy 'applicable solely to fleet vehicles.' We disagree, based on the word 'solely.'"). If the Court assumes that insurance "applicable solely to fleet vehicles" is synonymous with insurance "on nonfleet private passenger motor vehicles," the Court renders the legislature's use of the word "solely" meaningless.

Moreover, the Duffy's interpretation essentially adds the word "solely" into an additional section of the FRA. "The problem with this approach is the one that inheres in most incorrect interpretations of statutes: It asks us to add words to the law to produce what is thought to be a desirable result. That is [the legislature's] province. We construe [a statute's] silence as exactly that: silence." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015); *see also Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 794 (2014) ("This Court has no roving license, in even ordinary cases of statutory interpretation, to disregard clear language simply on the view that . . . [the legislature] 'must have intended' something broader."). Thus, the Court will avoid adding the word "solely" to the FRA language at issue and instead interpret "insurance on nonfleet

11

private passenger motor vehicles" to mean an insurance policy that specifically covers commercial fleet vehicles but could also cover additional undesignated vehicles

Finally, the North Carolina Court of Appeals has interpreted the FRA's stacking requirements based on the "nonfleet private passenger motor vehicles" language alone. In another unpublished decision, *Integon Nat. Ins. Co. v. Sechrist*, 708 S.E.2d 216 (N.C. Ct. App. 2011) (table), a party sought coverage through his father's "Business Auto Policy" after the party was injured in a vehicle not specifically included in the policy's coverage. The court prohibited interpolicy stacking because the two vehicles covered by the father's policy were not private passenger motor vehicles. *Id.* In so holding, the court declined to address the FRA's "applicable solely to fleet vehicles" language – indeed, if the "applicable solely to fleet vehicles" language did control stacking in *Integon*, as the Duffys claim it does here, then any evaluation of the vehicles covered by the "Business Auto Policy" would be irrelevant, because the party was injured in a vehicle not covered by that policy.

Guided by such interpretations, the Court will apply the FRA's two portions independently: exemptions from all underinsured motorist coverage apply to polices "applicable solely to fleet vehicles," and exemptions from stacking requirements apply to "insurance on nonfleet private passenger motor vehicles." Though "[t]he purpose of the Act … is best served when every provision of the Act is interpreted to provide the innocent victim with the fullest possible protection," *Pennington*, 356 N.C. at 574, 573 S.E.2d at 120, this Court should not disregard the statutory language to accomplish this purpose. Thus, because the Selective policy is not "insurance on nonfleet private passenger motor vehicles," the policy is exempt from the FRA's stacking requirements. *See* N.C. Gen. Stat. § 20-279.21(b)(4).

12

## 2. Selective Fulfilled Its Obligations Under the Selective Policy Language

Even if the policy language controls, the Duffys argue they are entitled to an additional $700,000 to reach their $1,000,000 per-accident limit. In essence, the Duffys contend Selective is liable to each Duffy for $1,000,000 in UIM coverage under the Selective policy, and that each Duffy received only $350,000 in UIM coverage from other UIM policies.[4] Thus, they argue, each Duffy is entitled to their claim amount less $350,000, capped together at $1,000,000; for each, this amount could be up to $650,000. Accordingly, under the Duffy's interpretation, Selective owes up to $1,300,000, which would be capped at $1,000,000 and prorated. The Duffys are incorrect.

The North Carolina Court of Appeals' decision in *Nationwide Mut. Ins. Co. v. Haight*, 152 N.C. App. 137, 138, 566 S.E.2d 835, 835 (2002) controls this discussion. There, four parties were injured in a car collision, two of whom were insured by the same Nationwide UIM policy. Those two parties made claims, and the tortfeasor's insurance provider, Aetna, provided coverage up to its liability limits of $100,000 per person (the policy also included a $300,000 per-accident limit). The parties' Nationwide UIM policy provided a "Combined Single Limit" (or CSL) of $500,000 per accident, and Nationwide tendered $200,000 to the parties, after offsetting Aetna's $300,000 per-accident limit, which it argued Aetna would ultimately exhaust. The injured parties sued, and the trial court applied the approach the Duffys suggest here, finding:

> That the total amount of under-insured coverage available to Sondra Haight under the Nationwide Policy, after giving credit for the $100,000 payment she received from Aetna's liability policy, is $400,000.

> That the total amount of under-insured coverage available to the Estate of James Robert Scott Haight under the Nationwide Policy, after giving a credit for the $100,000 payment it received from Aetna's liability policy is $400,000.

---

[4] The Duffys also note (and Selective does not dispute) that the Selective policy is an excess policy, meaning the $200,000 tendered to the Duffys by the tortfeasor's insurance will not offset the Duffy's UIM recovery.

13

*Haight*, 152 N.C. App. at 139, 566 S.E.2d at 836. Thus, the trial court ordered Nationwide "to pay to the Defendants the unpaid balance of the $500,000 Under Insured Motorist Coverage under its policy" – an additional $300,000, "prorated between the Defendants based on the amount of each Defendant's UIM claim." *Id.*, 566 S.E.2d at 836.

The Court of Appeals reversed. "Because the Nationwide policy sets only one 'combined single limit' of $500,000 on its UIM coverage, rather than a per-person limit, we do not believe [the trial court's] method of computing the offset is consistent with the statute as applied to this policy." *Id.* at 140-41, 566 S.E.2d at 837.

The *Haight* Nationwide policy and the Duffy's Selective policy are analogous. To begin, both include an identical "limit of insurance" clause: "Regardless of the number of covered 'autos', 'insureds', premiums paid, claims made or vehicles involved in the 'accident', the most we will pay for all damages resulting from any one 'accident' is the limit of Uninsured Motorists Coverage shown in the Declarations." (Doc. No. 1-1, at 142); *Haight*, 152 N.C. App. at 141, 566 S.E.2d at 837. Both policies also provide only one limit on UIM coverage – in *Haight*, a combined single limit of $500,000, and here, a "$1,000,000 CSL." (Doc. No. 1-1, at 139); *Haight*, 152 N.C. App. at 141, 566 S.E.2d at 837.

In reversing, the *Haight* court distinguished earlier North Carolina precedent, *North Carolina Farm Bureau Mutual Insurance Co. v. Gurley*, 139 N.C. App. 178, 532 S.E.2d 846 (2000), which held that "when the negligent driver's liability policy was exhausted pursuant to the per-person cap, the UIM policy's per-person cap will be the applicable limit. However, when the liability policy was exhausted pursuant to the per-accident cap, the applicable UIM limit will be the UIM policy's per-accident limit." 139 N.C. App. at 181, 532 S.E.2d at 849.

14

The *Haight* Nationwide policy – like the Duffy's Selective policy – set only one combined single limit, rather than a combined single limit and a per-person limit, and the *Haight* court held such a policy "more nearly resembles a per-accident limit." *Haight*, 152 N.C. App. at 142, 566 S.E.2d at 838. Thus, "the statute [N.C. Gen. Stat. § 20–279.21(b)(4)] and policy here require that we calculate the difference between the 'combined single limit' of $500,000 under the UIM policy and the combined total actually paid to these two defendants by the liability carrier." *Id.* at 143, 566 S.E.2d at 838. Accordingly, the Court of Appeals ordered Nationwide to pay an additional $100,000, for a total of $300,000 – the difference between the combined single limit and the amount paid by Aetna. *Id.*, 566 S.E.2d at 838-39.

Two issues remain before applying *Haight*: first, *Haight* addressed offsetting the tortfeasor's liability payments, while the instant case involves offsetting excess UIM payments. An offset of UIM payments rather than tortfeasor liability payments is appropriate, however. *See Creed v. Creed*, 258 N.C. App. 564, 811 S.E.2d 241 (2018) (quoting *Iodice v. Jones*, 133 N.C. App. 76, 79, 514 S.E.2d 291, 293 (1999)) (noting excess UIM coverage providers may offset payments from other UIM coverage providers); *Onley v. Nationwide Mut. Ins. Co.*, 118 N.C. App. 686, 691, 456 S.E.2d 882, 885 (1995) (holding "multiple UIM carriers are to share the [tortfeasor liability] credit pro rata," and, accordingly, that UIM carriers can offset other UIM payments).

Second, the Duffys argue that the Selective policy does set a per-person and combined single limit. In support, the Duffys point to the policy's "Changes In Uninsured Motorist Coverage," which provides:

> **C. Changes In Uninsured Motorists Coverage**
>
> The Limit of Insurance applies except that we will apply the limit shown in the Declarations to first provide the separate limits required by North Carolina Law as follows:
>
> 1. $30,000 for "bodily injury" to any one person caused by any one "accident";
> 2. $60,000 for "bodily injury" to two or more persons caused by any one "accident"; and
> 3. $25,000 for "property damage" caused by any one "accident".
>
> This provision will not change the total Limit of Insurance.

(Doc. No. 1-1, at 157). The Duffys contend this language provides per-person and per-accident limits, and so "the policy contemplates having individual claims as well as aggregate claims …. It has both a single limit of a million dollars for a single claimant and a single limit combined for multiple claimants." (Summary Judgment Transcript, at 24).

The Duffys misconstrue this language – the language provides a floor, not a ceiling. *Hlasnick*, 136 N.C. App. at 325, 524 S.E.2d at 390 ("[North Carolina law] provides a floor of underinsured coverage that insurers must provide."). Moreover, application of the Duffy's interpretation here would render useless any discussion of per-person vs. per-accident UIM coverage – such as that in *Haight* and *Gurley* – as the FRA is "deemed to be a part of every automobile insurance policy written in North Carolina and control over contrary provisions contained in such policies." *Nunnery*, 222 N.C. App. at 730 S.E.2d at 225.

Therefore, the North Carolina Court of Appeals' analysis in *Haight* controls: "only one calculation is performed for all claimants combined," and the Duffys can recover the difference between the combined single limit under the UIM policy and the combined total paid by the other UIM carriers. *Haight*, 152 N.C. App. at 142, 566 S.E.2d at 838. Here, that amount is $1,000,000 less $700,000, resulting in $300,000 to be shared on a pro rata basis.

16

### 3. Default Judgment Against Lawn Etc., LLC is Proper

Selective also included the Duffy's business, Lawn Etc., LLC (d/b/a Corrective Landscape Services) ("Lawn Etc."), as a defendant in this action, but Lawn Etc. declined to respond. (Doc. No. 25 ("[U]ndersigned counsel and counsel for the Defaulting Defendant have conferred and counsel for the Defaulting Defendant stated that the Defaulting Defendant does not plan on filing a responsive pleading.")). Selective then moved for an entry of default against Lawn Etc., (Doc. No. 24), to which Lawn Etc. also did not respond, and accordingly, the Clerk entered default against Lawn Etc. (Doc. No. 27). Selective, along with its motion for summary judgment, now moves in this Court for default judgment against Lawn Etc.

In moving for default judgment against Lawn Etc., Selective seeks "a declaration that its total combined responsibility to Defendants Adam C. Duffy and Lydia Duffy, collectively, under the Selective Policy is $300,000." (Doc. No. 33). The Duffys, for their part, note that Lawn Etc. neither seeks nor is entitled to any UIM coverage under the Selective policy, and they seemingly consent to default judgment provided it is "limited to a declaration by the court that any interest [Lawn Etc.] has with regard to the insurance policy at issue does not include any claim for UIM benefits arising out of the … collision." (Doc. No. 35). Selective objects to this request because it is untimely and improperly submitted; any such request should have been made, Selective argues, in response to Selective's motion for default judgment.

Selective correctly notes that the Duffy's request on behalf of Lawn Etc. should have been made in response to the motion for default judgment, and that Lawn Etc. made no effort to set aside the entry of default. *See* Local Rule 7.1(c)(2) ("Motions shall not be included in responsive briefs. Each motion must be set forth as a separately filed pleading."). Under Federal Rule of Civil Procedure 55(b), the Court is well within its discretion to grant default judgment against Lawn Etc.

17

*See also Penn Am. Ins. Co. v. Valade*, 28 F. App'x 253, 260 (4th Cir. 2002) (affirming default judgment against insured in declaratory judgment action).

Evidently, the parties' quarrel is over the precise language the Court might use in a default judgment order: the Duffys seek to employ less restrictive language, ("any interest does not include … UIM benefits"), while Selective seeks a more comprehensive and final statement, ("[Selective's] total combined responsibility … is $300,000").[5] Because Lawn, Etc. failed to respond or otherwise defend itself in this action, and because disposal of the motion for summary judgment also includes judgment against Lawn Etc., the Court will **GRANT** Selective's motion for default judgment against Lawn Etc. and grant Selective the relief it seeks.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 30), is **GRANTED**, and the Court finds that Plaintiff Selective Insurance Company of South Carolina's total combined responsibility to Defendants Adam C. Duffy and Lydia Duffy under the Selective policy is, collectively, $300,000; and

2. Plaintiff's Motion for Default Judgment as to Defendant Lawn Etc., LLC, d/b/a Corrective Landscape Services, (Doc. No. 32), is **GRANTED**.

---

[5] Selective also includes a request for costs and attorneys' fees in its complaint against the Duffys and Lawn Etc., but Selective has no basis to recover either – the Selective policy does not provide for attorneys' fees in the event of a dispute between insurer and insured and Selective offers no legal basis for such recovery. *See Pekin Ins. Co. v. Innovative Coatings & Materials, L.L.C.*, No. 5:19-CV-00128, 2021 WL 666967, at *2 (W.D.N.C. Feb. 19, 2021) (denying attorneys' fees in a default judgment because "[w]hile [defendant] seeks interest and attorneys fees in its motion to the extent 'allowed by law,' it has sought no specific amount of recovery as to these items nor has it offered any evidence in support of its entitlement to fees or the applicable pre-judgment interest rate. Accordingly, the Court will not award this relief.").

The Clerk is directed to close this case.

Signed: August 11, 2023

Robert J. Conrad, Jr.
United States District Judge